UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMETRIUS PEREZ,<br>    Plaintiff,<br><br>v.<br><br>LEO ARNONE, et. al.,<br>    Defendants. | :<br>:<br>:      PRISONER<br>:      CASE NO. 3:12-cv-1591 (VLB)<br>:<br>:<br>: |

## INITIAL REVIEW ORDER

The plaintiff, Ometrius Perez, currently incarcerated at the Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, has filed a complaint pro se under 42 U.S.C. § 1983 (2000). The plaintiff names twenty-seven defendants: Leo Arnone, the Connecticut Department of Correction, Captain Patz, Wanda White-Lewis, Karen Danis, Dr. Coleman, Deputy Warden Guadarrama,[1] Ms. Baker, Mr. Roy, Ms. Byers, Mr. Nuzzo, Mrs. Johnson, Correctional Managed Health Care, Michael Desena, Brian Hicock, Dr. Smyth, Steve Swan, Mr. Erfe, Mr. Ballaro, Mr. Pluszynski, Mr. Reid, Mr. Brown, Correctional Enterprises of Connecticut, Angel Quiros, Rikel Lightner, Lieutenant Alexander and CTO Blachard. The plaintiff asserts claims for violation of his rights under the Eighth Amendment and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil

---

[1] This defendant is incorrectly identified on the docket as Mr. Guadaprama. See www.ct.gov/doc/ (facilities page for MacDougall-Walker Correctional Institution)(last visited Nov. 19, 2012).

1

complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Id.  In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  But "'[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  Boykin v. KeyCorp., 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  Furthermore, even though a pro se plaintiff is afforded leeway to plead, the filings must comply with the basic requirements of Rule 8, that they be concise and direct.  *See* Jones v. Natn'l Commc'ns & Surveillance Networks, 266 Fed.Appx.31, 2008 WL 482599 (C.A.2 (N.Y.)) (affirming defendant's motion to dismiss on the grounds that the prolixity of the pleading placed an unjustified burden on the parties and the court).

## ALLEGATIONS

The lengthy complaint alleges the following facts. The plaintiff is legally blind and suffers from PTSD and anxiety disorder. He was extradited to Connecticut from a New York correctional facility on December 28, 2010. Upon his arrival at Bridgeport Correctional Center ("Bridgeport"), his medical auxiliary aids and adaptive equipment, including a sight cane, word processor for the blind and magnifying glasses, were confiscated and the plaintiff was housed in the medical unit. The plaintiff contends that he should have been housed in general population in a single cell with his auxiliary aids and adaptive equipment.

On January 11, 2011, the plaintiff was transferred to the Department of Correction assessment facility. Both at Bridgeport and the new facility, the plaintiff submitted an institutional grievance and request for accommodation seeking return of his auxiliary aids. He also sought a single cell as treatment for his mental health conditions. The aids were not returned and the plaintiff was required to share a cell.

On February 7, 2011, the plaintiff was transferred to the MacDougall Correctional Institution ("MacDougall"). He again was required to share a cell. On March 23, 2011, defendant Lewis denied the plaintiff his auxiliary aids and defendant Reid forced the plaintiff to dispose of the aids. The aids were not permitted according to the Department of Correction Inmate Property directive.

Between December 28, 2010 and February 10, 2012, correctional staff assigned randomly selected inmates to escort the plaintiff about the facility. These inmates repeatedly walked the plaintiff into door frames, furniture and

poles on the average of three-to-four times per day. The plaintiff's cellmates stole his commissary purchases and personal property and bullied him daily.

In response to his complaints, defendant Baker moved the plaintiff to another two-person cell on July 25, 2011. The plaintiff alleges that this transfer was retaliatory. The following day, the plaintiff asked Captain Otero for a trained blind escort. The request was denied and, on July 29, 2011, the plaintiff was returned to his previous housing unit. On August 2, 2011, defendant Baker questioned why the plaintiff had returned to the unit and threatened to send him to Northern Correctional Institution if he persisted in complaining about his cellmate.

On August 12 and 28, 2011, the plaintiff complained to mental health staff that he was being abused by his cellmate and was having difficulty controlling his PTSD, anxiety, violent impulses and suicidal impulses. The complaint was ignored. On September 2, 2011, the plaintiff told defendant Baker that he was having difficulty coping with the hostile environment in his cell. Defendant Baker told the plaintiff to write to Deputy Warden Wright for review of his request for single cell status. On September4, 2011, mental health staff member Lyles told the plaintiff that she could not help him with his PTSD and anxiety disorder, but would schedule him to be seen by defendant Dr. Coleman. The plaintiff was not immediately seen by defendant Coleman or any other mental health staff.

On September 26, 2011, the plaintiff was escorted to defendant Guadarrama's office where he and defendant Baker tried to pressure the plaintiff

to withdraw his request for single cell status.  The plaintiff refused.  As he was leaving the officer, defendant Guadarrama told the plaintiff that his stay at MacDougall would be difficult if he continued to complain and file grievances.  Defendant Baker suggested that the plaintiff speak with the tier-men to see if any of them would consent to be housed with him.  The plaintiff responded that many of his difficulties resulted from defendant Baker's statement on the tier that the inmates interpreted as accusing the plaintiff of snitching about his cellmates.

On October 20, 2011, the plaintiff informed defendant Baker that his cellmate was becoming more hostile and attempting to provoke a fight.  On October 26, 2011, defendant Guadarrama told the plaintiff that he knew the plaintiff had filed a grievance against him and told the plaintiff not to hold his breath waiting for defendant Guadarrama to approve his request for single cell status.

On October 27, 2011, the plaintiff told defendant Nuzzo that his cellmate continued to provoke him and, unless he was transferred, it was only a matter of time until the provocation caused him to lose control and kill his cellmate.  Defendant Byers threatened to send the plaintiff to segregation and ordered him away from the officers' station.  Defendant Byers immediately went to defendant Baker's office.  Five minutes later, defendant Baker sent the plaintiff to segregation.

Upon arrival in the restrictive housing unit, staff confiscated the plaintiff's contact lenses and eyeglasses, rendering him totally blind, and placed him in a

double cell.  When the plaintiff stated that he should be placed in a single cell, the correctional officer escorted the plaintiff to a flight of stairs and let him fall, causing the plaintiff to tear a tendon in left wrist and left knee.  The plaintiff was placed in a cell without receiving medical attention.  The plaintiff later spoke with defendant Coleman who ordered the plaintiff taken to the medical unit for observation and examination.   The plaintiff received x-rays and was provided braces for his wrist and knee but no other treatment.  He experiences extreme pain in both wrist and knee.  The plaintiff's contact lenses and glasses were returned to him on November 22, 2011.  The plaintiff had no access to his legal papers while he was in segregation.

On November 1, 2011, the plaintiff told defendant Roy that he needed large-print copies of the disciplinary reports, incident reports and investigation reports.  Defendant Roy told the plaintiff that he was not required to provide large-print copies.  Defendant Roy refused to review the plaintiff's mental health diagnosis, preferring to speak to defendant Coleman.  Defendant Blanchard was assigned as the plaintiff's advocate.  Defendant Blanchard also refused to provide the plaintiff large-print copies of the documents or search his inmate property for his mental health records.  When the plaintiff asked defendant Blanchard to review the video of the conversation to see that he posed no threat to safety or security, defendant Blanchard lied and stated the tape showed no conversation.

On November 17, 2011, the plaintiff informed defendant Hearing Officer Alexander that he had not received any of the documents he had requested in

large print and that defendant Blanchard refused to review or present his mental health records as evidence.  Defendant Alexander refused to conduct an independent investigation and found the plaintiff guilty of the charge.

On November 22, 2011, the plaintiff was transferred to Corrigan-Radgowski Correctional Institution ("Corrigan").  The plaintiff does not have access to vocational or industrial programs.  Although these programs were available at MacDougall, the plaintiff could not participate in the programs because he is legally blind.

On November 29, 2011, the plaintiff was examined by Dr. Saramanidis.  The doctor told the plaintiff that he only had one contact lens and needed new lenses.  Defendant Dr. Smyth, at MacDougall, had begun examining the plaintiff for new lenses but stopped when the plaintiff questioned whether he was a low vision specialist.  Dr. Saramanidis submitted requests for new contact lenses, a sight cane and examination by a low vision specialist.

Defendant Danis refused to help the plaintiff obtain other aids to accommodate his disability.  On February 10, 2012, the plaintiff was issued a sight cane for the blind.  Defendant Erfe required that the plaintiff report to the medical unit every morning for staff to check the sight cane.  The plaintiff filed a grievance about this requirement as inmates with wooden canes, walkers and wheel chairs were not required to have these items inspected in the medical unit each day.  The grievance was denied.  On March 20, 2012, the plaintiff received new contact lenses.

On April 7, 2012, defendant Ballaro and other staff members conspired to place the plaintiff on isolation status by alleging that the plaintiff refused to report to the medical unit to have his cane inspected. Their goal was to have the plaintiff's contact lenses and polarized glasses confiscated. The exposure to light caused pain to the plaintiff's optic nerves. The plaintiff was placed in punitive segregation and suffered pain as a result of the overexposure to light.

On June 14, 2012, the plaintiff was seen by a low vision specialist and learned that his vision had diminished. The plaintiff was fitted for new glasses and magnifiers, but the Department of Correction did not provide either item. The plaintiff saw the low vision specialist a second time on October 4, 2012. He told the plaintiff that the Department of Correction refused to purchase the glasses.

While confined at MacDougall, the plaintiff repeatedly requested a job in industry or a job as a tierman until a job in industry was available. He was denied both jobs because of his disability. Defendant Brown refused to make reasonable accommodations to enable the plaintiff to work at a prison job. Upon his transfer to Corrigan, the plaintiff requested a job as a tier-man or serving food in the housing unit. He was placed on the job list in April 2012. Defendant Pluszynski told the plaintiff that he would not hire him as a tier-man because of his disability but would assign the plaintiff to a food server job when one became available. This did not happen. The plaintiff was passed over for several jobs in favor of inmates who arrived in the housing unit after the plaintiff.

Between December 28, 2010 and the present, the plaintiff made repeated

requests for a cctv and word processor for the visually impaired for use in his cell.  He claims he needs these items to file legal papers and complete educational work.  Correctional staff, including defendants Desena, Hicock, Patz, Danis and Lewis, confiscated all of his personal auxiliary aids and adaptive equipment when he arrived in Connecticut from New York and refuse to accommodate the plaintiff's disability in any way.

## ANALYSIS

I.   **Department of Correction, Correctional Managed Health Care and Correctional Enterprises**

State agencies, such as the Department of Correction and the University of Connecticut Health Center's Correctional Managed Health Care Program, are not considered persons within the meaning of section 1983.  See Fisher v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (state prison department cannot be sued under section 1983 because it does not fit the definition of "person" under section 1983); Santos v. Department of Correction, No. 3:04cv1562 (JCH)(HBF), 2005 WL 2123543, at *3 (D. Conn. Aug. 29, 2005) (holding that Connecticut Department of Correction is not a person under section 1983).  Correctional Enterprises is merely a program of the Connecticut Department of Correction.  See Administrative Directive 10.20(3)(C), www.ct.gov/doc (last visited Nov. 26, 2012).  There is no evidence that the program has any independent legal existence subjecting it to suit.  All section 1983 claims against the Department of Correction

and all claims against Correctional Managed Health Care and Correctional Enterprises are DISMISSED pursuant to 28 U.S.C. § 1915A. The ADA claim will proceed against defendant Department of Correction.

## II. Defendants Alexander, Roy and Blanchard

The allegations against these three defendants relate to their participation in a disciplinary proceeding against the plaintiff. Defendant Alexander was the hearing officer, defendant Roy the investigator and defendant Blanchard the plaintiff's advocate. Although the plaintiff only refers to the Eighth Amendment, the allegations suggest a claim for denial of due process because the plaintiff was not provided copies of documents in large print, defendants Roy and Blanchard did not thoroughly investigate the incident and defendant Alexander refused to independently investigate the matter.

To prevail on a due process claim, the plaintiff must show that he had a protected liberty interest and that he was not afforded the requisite process before he was deprived of that interest. See Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000). To determine whether a prisoner had a protected liberty interest in a disciplinary hearing, the Court must look to Sandin v. Conner, 515 U.S. 472 (1995), in which the Supreme Court held that state-created liberty interests of prisoners were limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. The rule in this Circuit, since Sandin, is that a prisoner has a

protected liberty interest "'only if the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation.'"  <u>Tellier v. Fields</u>, 280 F.3d 69, 80 (2d Cir. 2000) (quoting <u>Sealey v. Giltner</u>, 116 F.3d 47, 52 (2d Cir. 1997)) (omission in original).

As a result of the disciplinary charges, the plaintiff was confined in restrictive housing for five days and received sanctions of 10 days loss of recreation and 45 days loss of phone.  The Second Circuit has held, however, that confinement in restrictive housing for periods much longer that the time specified on the documents attached to the complaint do not constitute an atypical and significant hardship sufficient to state a claim under <u>Sandin</u>.  See, e.g., <u>Frazier v. Coughlin</u>, 81F.3d 313, 317-18 (2d Cir. 1996) (holding that 120 days confinement in segregation followed by 30 days loss of recreation, commissary privileges, packages and telephone use did not state a cognizable claim for denial of due process).  Thus, the claims against defendants Alexander, Roy and Blachard are DISMISSED pursuant to 28 U.S.C. § 1915A.

III.    <u>ADA</u>

Specific public employees are not included within the definition of public entity under Title II of the ADA and, therefore, Title II does not provide "for individual capacity suits against state officials."  <u>See</u> <u>Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn</u>, 280 F.3d 98, 107 (2d Cir. 2001).  Thus all ADA claims against the correctional employee defendants in their individual capacities are

DISMISSED.

The Second Circuit has recognized, however, that a valid ADA claim may be stated against a state official in his official capacity.  See <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 289 (2d Cir. 2003) (holding that state official in his official capacity may be sued for prospective injunctive relief under Title II of the ADA).  Thus, the court permits the ADA claim to proceed against the remaining individual defendants in their official capacities only.

### ORDERS

In accordance with the foregoing analysis, the court enters the following orders:

(1)     All claims against defendants Alexander, Blanchard, Roy, Correctional Managed Health Care and Correctional Enterprises, the section 1983 claims against the Department of Correction and any ADA claims against the individual defendants in their individual capacities are DISMISSED pursuant to 28 U.S.C. § 1915A.

(2)     The Pro Se Prisoner Litigation Office shall verify the current work addresses of defendants Patz, White-Lewis, Danis, Coleman, Guadarrama, Baker, Byers, Nuzzo, Johnson, Desena, Hicock, Smyth, Swan, Erfe, Ballaro, Pluszynski, Reid, Brown, Quiros and Lightner with the Department of Correction Office of Legal Affairs, and mail waiver of service of process request packets to each defendant at his or her confirmed address within fourteen (14) days of this Order.

**The Pro Se Prisoner Litigation Office shall report to the court on the status of that waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Pro Se Prisoner Litigation Office shall make arrangements for in-person service by the U.S. Marshals Service on that defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).**

   (3) The Pro Se Prisoner Litigation Office shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the Department of Correction and on defendants Patz, White-Lewis, Danis, Coleman, Guadarrama, Baker, Byers, Nuzzo, Johnson, Desena, Hicock, Smyth, Swan, Erfe, Ballaro, Pluszynski, Reid, Brown, Quiros and Lightner in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within fourteen (14) days from the date of this order and to file returns of service within twenty (20) days from the date of this order.

   (4) The Pro Se Prisoner Litigation Office shall send written notice to the plaintiff of the status of this action, along with a copy of this Order.

   (5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within seventy (70) days from the date of this order. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include any and

all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) The defendants are to respond to the plaintiff's motion for preliminary injunctive relief within 21 days of entering an appearance in this case.

SO ORDERED this 15th day of March, 2013, at Hartford, Connecticut.

_____/s/_____
VANESSA L. BRYANT
UNITED STATES DISTRICT JUDGE