# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OMETRIUS PEREZ, | : | |
| *Plaintiff*, | : | |
| | : | **CIVIL ACTION NO.:** |
| v. | : | |
| | : | **3:12-cv-1591 (VLB)** |
| LEO ARNONE, et al. | : | |
| *Defendants.* | : | **July 26, 2018** |
| | : | |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART MOTION FOR SUPPLEMENTAL SUMMARY JUDGMENT [DKT. 221]

This case is a *pro se* civil rights action filed by Plaintiff Ometrius Perez against the Connecticut Department of Correction ("DOC") and various individuals.[1] Mr. Perez asserts violations of his rights under the Eighth Amendment and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. Before this Court is Defendants' supplemental motion for summary judgment raising a failure to exhaust administrative remedies defense under the Prison Litigation Reform Act ("PLRA"). The Court previously denied Defendants' initial motion for summary judgment on all grounds, but Defendants did not brief the failure to exhaust administrative remedies defense. Jury selection is set for August 28, 2018, and the Court now addresses the failure to exhaust issue in anticipation of

---

[1] These individual Defendants as identified are: Leo Arnone, Captain Patz, Wanda White-Lewis, Karen Danis, Dr. Coleman, Deputy Warden Guadarrama, Ms. Baker, Ms. Byers, Ms. Nuzzo, Mrs. Johnson, Michael Desena, Brian Hicock, Dr. Smyth, Steve Swan, Mr. Erfe, Mr. Ballaro, Mr. Pluszynski, Mr. Reid, Mr. Brown, Angel Quiros, and Rikel Lightner.

trial. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

Background

An analysis of this supplemental summary judgment motion requires a review of the procedural posture and the relevant facts.

I. Procedural Posture

Mr. Perez filed this action *pro se* on November 9, 2012, raising violations of claims under 42 U.S.C. § 1983 for violations of the Eighth Amendment and the ADA. [Dkt. 1 (Compl.)]. In brief, Mr. Perez is legally blind and claims he was denied his medical auxiliary aids and adaptive equipment, which he possessed while incarcerated by the State of New York but which were confiscated after his transfer to the DOC system. He suffers from post-traumatic stress disorder ("PTSD") and anxiety disorder and requests to be housed in a single cell with his auxiliary aids and adaptive equipment. While in the restrictive housing unit ("RHU") in MacDougall Walker Correctional Institution ("MWCI"), Mr. Perez did not have contact lenses or eyeglasses (they were confiscated), and he claims he was escorted by a correctional officer to a flight of stairs, which he then fell down and sustained injuries to his left wrist and left knee. Mr. Perez also claims he was denied job opportunities because of his disability.

The Court issued an Initial Review Order in May 2013, dismissing all claims against Lt. Alexander, CTO Blanchard, Mr. Roy, Connecticut Managed Health Care, and Correctional Enterprises of Connecticut; the §

1983 claims against the DOC; and the ADA claims against the individual Defendants in their individual capacities. *See* [Dkt. 7]. Mr. Perez appealed this ruling, [Dkt. 8 (IRO Appeal)], but the Second Circuit dismissed the appeal on November 13, 2013, for lack of jurisdiction as the IRO was not a final decision under 28 U.S.C. § 1291. [Dkt. 20 (IRO Summ. Order)].

Around the same time Mr. Perez initiated the action, he also filed a Motion for Preliminary Injunction and Temporary Restraining Order. [Dkt. 5]. The Court ultimately granted in part and denied in part the motion on February 28, 2014. [Dkt. 27 (Order)]. Specifically, the Court granted Mr. Perez's motion as to his claim regarding prescription glasses and denied the motion in all other respects. *Id.* Mr. Perez appealed this ruling, [Dkt. 30 (Not. Appeal)], and Defendants moved to stay the case pending the outcome of the appeal, [Dkt. 35 (Mot. Stay)], which the Court denied in consideration of the fact the appeal was interlocutory and there did not exist any circumstances warranting a stay, [Dkt. 36 (Order)].

The Court entered a Scheduling Order accordingly, which contemplated summary judgment briefing due on July 18, 2014; a joint trial memorandum due March 2, 2015; and jury selection on April 7, 2015. *See* [Dkt. 37]. Defendants filed their summary judgment briefing on July 21, 2014. Defendants moved for judgment on all claims and argued that (1) Mr. Perez's legal blindness was not a serious medical need and the DOC was not deliberately indifferent to his needs; (2) Mr. Perez received reasonable accommodations under the ADA through Connecticut Services for the

Blind; (3) Mr. Perez does not have a constitutional right to a single cell; and (4) Mr. Perez does not have a constitutional right to a prison job. [Dkt. 38-1 (Mem. Mot. Summ. J.)]. Mr. Perez opposed this motion and the Court denied summary judgment on all grounds on March 26, 2015. The Court also ordered counsel to be appointed to Mr. Perez in anticipation of trial, and counsel from Carmody Torrance Sandak & Hennessey, LLP entered appearances on April 28, 2015, and June 4, 2015.

While the summary judgment motion was pending, the Second Circuit affirmed in part and vacated in part this Court's ruling on the Motion for Preliminary Injunction and Temporary Restraining Order on March 5, 2015. *See* [Dkt. 53 (Prelim. Inj. and TRO Summ. Order)]. The Court held the first hearing on December 14, 2015. The next hearing was set for February 29, 2016, but was rescheduled and held on April 29, 2016.

On May 5, 2016, Defendants requested permission to file supplemental summary judgment briefing to afford them the opportunity to argue certain Defendants were not personally involved and should not be parties in the action, which Defendants acknowledged they did not raise in the initial summary judgment briefing. [Dkt. 129 (Mot. Supp. Summ. J.)]. The Court denied this motion and stated it would not grant Defendants a "second bite at the apple by allowing serial dispositive motions." [Dkt. 132 (Order)].

After issuing this denial, the Court continued to hold evidentiary hearings on the Motion for Preliminary Injunction and Temporary

Restraining Order. It held a third preliminary injunction hearing on May 26, 2016 and set the fourth hearing for June 20, 2016; this hearing was continued upon Mr. Perez's request and on the same day the Court relieved Mr. Perez's counsel of their pro bono duties. [Dkt. 148 (Continuance Order); Dkt. 149 (Attorney Withdrawal Order)]. The Court held the fourth and fifth hearings on December 20 and 22 of 2016.

Attorney Norman Pattis entered an appearance on January 19, 2017. [Dkt. 180 (Not. Appearance)]. The sixth hearing was scheduled for February 6, 2017, but it was postponed to afford the parties the opportunity to engage in settlement. The case did not settle, so the Court set the seventh evidentiary hearing for November 21, 2017. By and through counsel, Mr. Perez moved to continue the hearing upon which the Court scheduled a telephonic conference for December 6, 2017, to discuss the continuance and the case schedule.

During the telephonic conference, the Court asked whether it would behoove the parties, in light of the age of the case, to proceed to trial. Attorney Pattis and Attorney Beizer agreed that this would be in the best interest of all parties. Attorney Beizer renewed his request to file supplemental summary judgment briefing to "pair down" the number of Defendants, and Attorney Pattis did not object. The Court granted permission for the parties to meet and confer and propose a briefing schedule. Instead, Attorney Beizer filed a Motion to File Supplemental Motion for Summary Judgment on the grounds of PLRA exhaustion along

with an accompanying supplemental summary judgment motion. The Court granted this request and now addresses the supplemental briefing.

II.  **Exhausting Remedies Under Administrative Directives**

The DOC utilizes various administrative directives to govern the policies and procedures for inmates filing administrative claims. In general, an inmate makes an initial request and upon a denial may undergo a multi-step appeals process. The exact procedure and applicable administrative directive differs between his reasonable accommodations requests and his deliberate indifference claims. The Court will assess the claims Mr. Perez allegedly failed to exhaust in the context of each administrative directive.

A. *Administrative Directive 10.19*

Administrative Directive 10.19 governs the needs of inmates with disabilities under the ADA. [2] An inmate seeking reasonable accommodations may first issue a request to the ADA Coordinator by submitting an oral or written request to a staff person. *See id.* § 7(A)(1). The DOC must act upon the request within two days and "[i]f the request is denied, the inmate shall be notified in writing and advised of the right to review the disposition directly with the Unit ADA Coordinator." *See id.* § 7(B), (C). An inmate who requests to meet with the Unit ADA Coordinator must meet with the inmate within 24 hours and the Unit ADA Coordinator

---

[2] Mr. Perez submitted Administrative Directive 10.19 that was in effect at the time of his filing. *See* [Dkt. 44-3 (Opp'n Mot. Summ. J. Ex. Part 2) at 84–89 of PDF].

must re-evaluate and issue a decision within one week. "If the disposition has not changed, the inmate shall be advised of the right to appeal the decision in accordance with Administrative Directive 9.6, Inmate Administrative Remedies." *See id.* § 7(C).

B. *Administrative Directive 9.6*

In general, all other requests "for an inmate who seeks formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority," are governed by Administrative Directive 9.6. This particular administrative directive "enables the Department to identify individual and systemic problems, to resolve legitimate complaints in a timely manner and to facilitate the accomplishment of its mission." [Dkt. 221-2 (Mot. Supp. Summ. J. Attachment 1, Administrative Directive 9.6), § 1].[3] Administrative Directive 9.6 requires an inmate to go through an Informal Resolution process by attempting to resolve the issue verbally with the appropriate staff member or supervisor/manager. *See id.* § 6(A). Should this effort fail to resolve the issue, the inmate must file a written request by submitting an inmate request form (Form CN 9601) and the response will be administered within 15 days. *See id.*

An inmate who is "not satisfied with the informal resolution offered" or who does not receive a timely response may file a grievance (Form CN

---

[3] Defendants submitted to the Court the version of Administrative Directive 9.6 that was in effect as of August 15, 2013. The Court presumes the versions are substantively the same and will rely on this document absent objection.

9602) and either (1) attach the inmate request form and response or (2) explain why the inmate request form is not attached. *Id.* § 6(C). The Directive does not require the grievance to be accompanied by a receipt for the inmate request form. *See id.* The Unit Administrator shall then make the Level 1 Review decision within 30 days, and after this date the inmate may appeal for Level 2 Review any denial, rejection, or failure to timely respond. *Id.* § 6(C), (I), (K).

The Unit Administrator shall then make the Level 1 Review decision within 30 days, and after this date the inmate may appeal for Level 2 Review any denial, rejection, or failure to timely respond. *Id.* § 6(C), (I), (K). Within 30 days the District Administrator shall render a decision, which exhausts the administrative process for all grievances except those challenging (1) Department level policy, (2) the integrity of the grievance procedure, or (3) timeliness of the decision. *Id.* § 6(L). Any disposition regarding these three exceptions may be appealed to the Commissioner or a designee for Level 3 Review. *Id.*

In addition to the grievance procedure, Directive 9.6 also provides that "[e]ach inmate in the Department's custody shall have access" to the Directive and that "[a]ny inmate who needs assistance in using the Inmate Administrative Remedies Process shall receive assistance upon request." *Id.* § 5(B)(1).

III.   **Facts Relevant to Exhaustion of Remedies**

Mr. Perez was transferred from New York in December of 2010 to the DOC Bridgeport Correctional Center ("Bridgeport") and shortly thereafter sent to an assessment facility. [Dkt. 1 (Compl.) at 25]. The following facts pertain to the inmate request forms and grievances Mr. Perez filed while in DOC custody and are derived from those he submitted as exhibits attached to the Complaint unless otherwise noted. *See* [Dkt. 1-3 (Compl. Exs., Inmate Request Forms and Grievances)].

Mr. Perez first began filing requests for reasonable accommodations, inmate request forms, and grievances while in assessment facilities[4] during January and the early part of February in 2011. *See* [Dkt. 1-3 (Compl. Exs. 1–3) at 1–56]. At the assessment facility, Mr. Perez filed multiple inmate request forms for (a) copies of the ADA notice of rights form and the reasonable accommodations form; (b) a return of his Sony headphones; and (c) the ability to go to religious services and the law library, as well as a mobility guide. He also filed a request for reasonable accommodations of auxiliary aids and adaptive equipment. He then filed a grievance requesting his reasonable accommodations. All of these forms and grievances were submitted from January 6 through 12 of 2011. Less than a week later on January 12 and 16 of 2011, Mr. Perez filed more inmate

---

[4] Exhibits 1 through 3 indicate that Mr. Perez directed his inmate request forms and grievances to the BCC Hospital, BCC, and Walker. He indicates in the Complaint that he was placed at the "'Walker' Assessment Facility" on January 11, 2011. The Court interprets this stage of his DOC custody as the initial assessment period.

request forms where he (a) requested a sight cane and his magnifying glasses and prescription glasses, which he claimed were confiscated and/or misplaced or lost at Bridgeport; (b) complained that he should not be housed with another individual; (c) renewed his request for ADA forms; and (d) asked to be seen by a mental health provider.   On January 20, 2011, Mr. Perez filed additional requests for reasonable accommodations regarding his need for adaptive equipment and to be housed in a single cell.   The next day he filed a grievance to obtain his missing adaptive equipment.   A few weeks later on February 3, 2011, Mr. Perez filed a grievance/Health Services Review regarding his placement in a cell with another inmate as a reasonable accommodation.

Mr. Perez was transferred to MWCI on February 7, 2011 and submitted various inmate request forms and grievances during his time at MWCI.  *See* [Dkt. 1-4 (Compl. Exs. 4–6) at 1–35; Dkt. 1-5 (Compl. Exs. 7–9) at 1–20].  He submitted two inmate request forms on February 8, 2011, for new contact lenses and a single cell.   He also submitted a grievance for his Sony Walkman, headphones, and calculator, items which he had in his possession in New York.   He filed a second grievance requesting the same items on February 23, 2011.   On February 24 and 25, 2011, Mr. Perez filed inmate request forms seeking adaptive equipment.   Three days later he filed a grievance seeking these items, and on March 23, 2011, he received a response from Defendant Wanda White-Lewis, ADA Director at the time, stating, "After discussion with appropriate staff, the ADA decision for

reasonable accommodation is as follows: magnifying glasses and sight cane will be allowed for inmate use." [Dkt. 1-4 at 23]. Ms. White-Lewis also determined he had exhausted his administrative remedies. *Id.*

On March 1, 2011, Mr. Perez filed another inmate request form about his adaptive equipment, reasonable accommodations, and inquiring about a job. Mr. Perez submitted two inmate request forms about a job on June 7 and August 18 of 2011. He also filed an inmate request form on August 12, 2011, following up about his request for a single cell—he submitted the same form on August 28, 2011, indicating he was having trouble controlling his anger. Mr. Perez later filed a grievance for reasonable accommodations, adaptive equipment, auxiliary aids, and a work assignment on September 5, 2011. Ten days later, he filed another inmate request form regarding his mental health issues and the need for a single cell, and he submitted a grievance for the same request on October 8, 2011.

After seven months in MWCI, the DOC transferred Mr. Perez to Corrigan-Radgowski Correctional Institution ("Corrigan") on November 22, 2011, and he continued to file inmate request forms and grievances. *See* [Dkt. 1-4 (Compl. Exs. 6) at 36–53; Dkt. 1-5 (Compl. Exs. 10, 12) at 21–31, 51-62]. The record indicates Mr. Perez filed an appeal on November 28, 2011, regarding disciplinary action taken against him; it was determined that he had exhausted his administrative remedies in this regard. On January 7, 2012, he filed two inmate request forms seeking (1) a certain job assignment and (2) a follow-up on his October 8, 2011, request for a single

cell.  With respect to the latter, he was notified that he would need to write to the Corrigan Grievance Coordinator and he submitted this request on January 9, 2012.  Mr. Perez also filed an ADA decision grievance regarding his sight cane and the search of his adaptive equipment, and his objection to the potential that he be placed in the medical unit.  He filed two grievances on August 13 and 27 of 2012, asserting he was not given a job opportunity because of his disability.  On September 10, 2012, he received a response indicating he was not entitled to any work and that he had exhausted his administrative remedies on this topic.  [Dkt. 1-5 at 49].  Mr. Perez appealed this decision by filing an inmate grievance appeal form (CN 6904) for which receipt was acknowledged on September 14, 2012.

## Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that "although the court should review the record as a whole, it

must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb*, 84 F.3d at 518); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

## Analysis

Defendants move for summary judgment on Mr. Perez's claims for failing to exhaust his administrative remedies with respect to his requests for reasonable accommodations under the ADA, and his deliberate indifference claims regarding (a) his serious medical needs for adaptive equipment as a legally blind person and (b) his need for a single cell due to his mental health issues. By and through appointed counsel, Plaintiff does not deny Defendants' factual assertions from the Local Rule 56(a) statement. *See* [Dkt. 221-8 (D. Conn. L. R. 56(a)(1) Stmt.); Dkt. 225 (Opp'n Mot. Supp. Summ. J.) at 1]. However, Mr. Perez requests that the Court reserve judgment on the exhaustion question and argues that the failure to exhaust should be equitably tolled given the length of time this litigation has been pending and on account of Mr. Perez's legal blindness and PTSD.

### I. Waiver of the Exhaustion Requirement

As an initial matter, the Court finds Defendants have not waived their failure to exhaust defense because they included it in the responsive pleading. "[T]he failure to exhaust administrative remedies is an affirmative defense that must be raised and proved by the defendant." *Villante v. VanDyke*, 93 F. App'x 307, 308 (2d Cir. 2004) (citing *Jenkins v. Haubert*, 179 F.3d 19, 18–29 (2d Cir. 1999)); *see Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (upholding dismissal for failure to exhaust and observing defendant raised the defense in his answer and asserted it during litigation). Rule 8(c) of the Federal Rules of Civil Procedure requires

only that an affirmative defense be included in the responsive pleadings, and it makes no mention of the requirement to include it in a pretrial motion. *See* Fed. R. Civ. P. 8(c). A party is always entitled to raise the defense at trial so long as the defense is made in the responsive pleadings. *See Villante*, 93 F. App'x at 310.

In *Villante*, the Second Circuit in a summary order upheld a district court's decision to allow the defendants to raise the affirmative defense of failure to exhaust administrative remedies after the summary judgment deadline had passed and despite the fact the defendants failed to include the argument in the initial summary judgment motion. *See id.* at 309–10. Like the defendants in *Villante*, Defendants in this case included this affirmative defense in the responsive pleadings. *See* [Dkt. 34 (Ans.) at 3]. In upholding the ruling, the Second Circuit reasoned that the defendants would have been able to assert the defense at trial. *See id.* at 310. For the same reasons, the Court CONCLUDES there is good cause to allow Defendants to assert this argument in a supplemental summary judgment motion.

Plaintiff argues Defendants should not be allowed to assert the affirmative defense this late in the litigation and that equitable tolling should apply. The doctrine of equitable tolling is impalpable. "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996); *see Equitable Tolling*, <u>Black's Law</u>

Dictionary (10th ed. 2014) ("The doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired, in which case the statute is suspended or tolled until the plaintiff discovers the injury."). Defendants have not asserted a statute of limitations defense but rather the defense at issue is the failure to exhaust administrative remedies and thus equitable tolling does not apply. *See generally Blaize v. Comm'r, Soc. Sec. Admin.*, 166 F.3d 1199 (2d Cir. 1998) (summary order) (denying equitable tolling request in a social security case because plaintiff failed to exhaust her administrative remedies).

## II.   Mr. Perez's Alleged Failure to Exhaust

Section 1997e of Title 42 of the United States Code governs actions brought by prison inmates. This section provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This subsection applies to all claims regarding prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Chrichlow v. Fischer*, No. 9:17-cv-00194 (TJM/TWD), slip op. at 7 (N.D.N.Y. Sept. 5, 2017) ("This [exhaustion] rule applies to an inmate's constitutional claims, as well as claims under the ADA and Rehabilitation Act."). Section 1997e requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth*

*v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95.

The exhaustion requirement, however, may be excused when the remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016); *Harvin v. Chapdelaine*, No. 3:16-cv-1616 (VAB), 2016 WL 7197363, at *1 (D. Conn. Dec. 9, 2016) (same). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). The United States Supreme Court has established three circumstances under which an inmate need not exhaust the administrative procedure as it is deemed unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60; *see*

*Williams v. Ford*, No. 3:14-cv-1181 (VAB), 2017 WL 1025661, at *4 (D. Conn. Mar. 16, 2017).

"Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (determining that the applicability of the *Ross v. Blake* "unavailability" exceptions lies "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate."). The failure to exhaust administrative remedies under 42 U.S.C. § 1997e is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 215 (2007) (ruling an inmate need not specially plead or demonstrate exhaustion in the complaint); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999) (same). As such, "defendants bear the initial burden of establishing, by pointing to legally sufficient source[s] such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59; *see Johnston v. Maha*, 460 F. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment."); *Michalski v. Corr. Managed Health Care*, No. 3:15-cv-571 (VAB), slip op. at 2 (D. Conn. Oct. 21, 2016) ("Thus, defendants have the burden of proving that [plaintiff] has not exhausted claims prior to filing this action."). If defendants meet this initial burden, a court may

nonetheless determine administrative remedies to be unavailable "if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact." *Hubbs*, 788 F.3d at 59.

A. *Reasonable Accommodations under the ADA*

The Court finds that Mr. Perez either exhausted his administrative remedies for his reasonable accommodations request under the ADA or the remedies were functionally unavailable. Administrative Directive 10.19 provides for the procedure in which an inmate can request reasonable accommodations. An inmate may make an oral or written request to a staff person, and if it is denied he is entitled to review the disposition with his Unit ADA Coordinator. *See* A.D. 10.19 § 7(A)-(C). Once the ADA Coordinator reviews the disposition with the inmate, he or she must issue a subsequent decision within the week. *See id.* § 7(C). If the decision is the same, the inmate must be advised of his right to appeal. "An inmate may file an appeal regarding an ADA decision in accordance with Administrative Directive 9.6, Inmate Administrative Remedies." *Id.* § 8.

Mr. Perez submitted requests for reasonable accommodations (Form CN 101902) on January 7 and 20 of 2011 wherein he asked for specific auxiliary aids, adaptive equipment, and a single cell. *See* [Dkt. 1-3 at 11–12, 41–46]. He then filed a Form CN 9602[5] on February 28, 2011, and he

_____

[5] On this form, Mr. Perez checked off the box indicating he was filing a grievance, but he also checked off the "ADA Decision" box listed under appeals. [Dkt. 1-4 at 22]. The Court expresses no opinion as to whether

indicated the ADA Coordinator had been ignoring him about his request for auxiliary aids and adaptive equipment. *See id.* at 22–25. He also claimed he submitted a written request to Captain Patz on January 20, 2011. *See id.* at 24. ADA Director Wanda White-Lewis responded at the bottom of the Form CN 9602: "After discussion with appropriate staff, the ADA decision for reasonable accommodation is as follows: magnifying glasses and sight cane will be allowed for inmate use." *Id.* at 23. Ms. White-Lewis also indicated that Mr. Perez exhausted his administrative remedies. *Id.*

Defendants argue that Mr. Perez did not exhaust his administrative remedies because he did not go through the entire appeals process. Jessica Bennett, the Administrative Remedies Coordinator at MWCI, also submitted an affidavit stating she reviewed his grievance history between January 1 and November 22, 2011; she attached several copies of grievances (many of which are from 2012 or 2013). *See* [Dkt. 221-6 (Bennett Aff.)]. One copy contains the first of the four-page Form CN 9602 where Ms. White-Lewis indicates Mr. Perez exhausted his DOC remedies, but the page with this information is one of the three pages inexplicably missing. *See id.* at 7. Colleen Gallagher, Perez's ADA Coordinator for the DOC since 2014, submitted an affidavit in which she explains she reviewed her office records and spoke with ADA representatives from MWCI and Corrigan, and their records reflect Mr. Perez only filed two ADA appeals in 2014 and 2017. *See* [Dkt. 221-7 (Gallagher Aff.) ¶ 2, 5–8]. The absence of the form

this submission was a grievance or appeal but notes that it appears to be received as an appeal.

indicating Perez had exhausted his administrative remedies raises an issue of fact for the jury as to whether Mr. Perez did in fact exhaust his administrative remedies. As the defendant bears the burden of proving an affirmative defense, summary judgment may not enter for Defendants on their failure to exhaust defense.

Administrative Directive 10.19 does not specify the exact provision from Administrative Directive 9.6 that applies to the appeal process for a reasonable accommodation request, and the Court surmises this may be the source of the discrepancies in the record.[6] *See* Administrative Directive 10.19 § 8. Irrespective of the discrepancies is a bigger issue: the opaque process of transitioning from Administrative Directive 10.19 to Administrative Directive 9.6 when appealing an ADA decision. Administrative Directive 9.6 specifies CN 9604 is the Grievance Appeal Form. *See* [Dkt. 221-2 § 6(D). However, Form CN 9602 can be used for certain appeals, including an appeal of an ADA Decision. *See, e.g.,* Dkt. 1-4 at 22. The Court is of the mind that the fact neither administrative directive expressly states the applicable form for an ADA decision appeal risks the process being "so opaque that it becomes, practically speaking, incapable of use" because two forms appear equally appropriate. *Ross*, 136 S. Ct. at 1860. If it is true Form CN 9602 is not the correct appeal and his claim

---

[6] The Court finds Ms. Gallagher's affidavit, averring to the absence of an appeal, to be  consistent with Defendant's Form CN 9602, *see* [Dkt. 1-4 at 23], which is not technically an appeal under Administrative Directive 9.6. The parties have not presented any evidence, such as an affidavit from Defendant White-Lewis, supporting a conclusion that Mr. Perez fabricated the Form CN 9602.

would have been denied on this ground, an "ordinary prisoner" would not be able to "discern or navigate" the appropriate process that is different from the face of the form. *See id.* It is because Defendants now argue he did not exhaust his remedies that the Court expresses concern about the procedure's opacity. That concern is heightened by Ms. White-Lewis's conclusion that Mr. Perez had exhausted his administrative remedies, which indicated that the process is so confusing that even DOC's own ADA Coordinator could not understand and navigate the process.

To the extent Defendants believe Mr. Perez was supposed to file a different form and failed to exhaust his remedies for this reason, the Court finds that Defendant White-Lewis's express direction that he exhausted his DOC administrative remedies is a classic example of misinformation that would have interfered with his pursuit of relief. *See Ross*, 136 S. Ct. at 1860 ("[I]nterference with an inmate's pursuit of relief renders the administrative process unavailable."). Further compounding the risk of confusion is the fact that an ADA reasonable accommodations request follows a slightly different path from typical inmate requests and is governed by two distinct administrative directives. Defendant White-Lewis's affirmative representation that all administrative remedies are exhausted would undoubtedly lead a person to stop the administrative remedy process, and this misrepresentation would have thwarted him "from taking advantage of the grievance process," rendering his remedies unavailable. *See id.*

The Court recognizes the parties may have overlooked this piece of evidence as the record is voluminous and often duplicative. If this were the case, the Court surmises Defendants would agree Mr. Perez had exhausted his remedies as to his ADA reasonable accommodations claim. This issue is moot, however, because Mr. Perez will proceed to trial on his reasonable accommodation claims irrespective of successful exhaustion or unavailable remedies. Specifically, trial will proceed on his ADA claim for the following as set forth in his exhausted Form CN 9602 for which relief he seeks in his Complaint: (1) access to a CCTV for in-cell and in-unit use; (2) personal word processor for in-cell use; (3) access to a computer, printer, and scanner equipped with zoom text and window eye programs for the blind; (4) the return of his magnifying glass and sight cane; (5) the replacement of his clip-on magnifier; (6) large print materials; (7) trained mobility guides; (8) access to a CCTV in program areas including the libraries; and (9) 20/20 pens, yellow highlighters, and free matter (envelopes) for the blind.

### B. *Deliberate Indifference Claims*

Defendants also contend that Mr. Perez failed to exhaust his administrative remedies for all Eighth Amendment claims for deliberate indifference relating to Defendants' failure to treat his serious medical needs, which includes their failure to provide him with single cell status. Unlike the ADA claim, the deliberate indifference claims are governed by Administrative Directive 9.6, which sets forth the general procedure for

claims related to confinement.  *See Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016) (applying Administrative Directive 9.6 to a deliberate indifference claim).  The parties have not identified any other applicable Administrative Directive.

In reviewing Administrative Directive 9.6, the Court finds that the grievance process is clearly established.  In short, an inmate must first make an informal request with CN 9601 Form; second, he must file a grievance with Form CN 9602; and then he can file a Form CN 9604 to engage in up to two levels of appeals before the administrative remedies are exhausted.  *See* [Dkt. 221-2 § 6].  The Administrative Directive 9.6 provisions account for the DOC's failure to respond and clearly states all deadlines for both the inmate and the DOC.  *Id.*  There is nothing on the face of Administrative Directive 9.6 that would lead the Court to conclude the procedure is overly opaque or would lead to a dead end, and therefore the Court finds Defendants have met their burden to show an administrative remedy is available. *See Hubbs*, 788 F.3d at 59 (stating defendants bear initial burden to show grievance process exists and applies).

When defendants meet this burden, the onus is then put on the plaintiff to show the procedure is unavailable.  Plaintiff has not offered any such evidence in response.  The Court has reviewed the CN Forms he filed as exhibits to the Complaint as well as CN Forms Defendants submitted as exhibits to this motion and concludes he has not filed any appeals about

his need for single cell status, adaptive aids, or other issues making up his deliberate indifference claims.

Nor can Mr. Perez claim Defendants thwarted his efforts to grieve these denials. He is a prolific filer and demonstrates an ability to write the appropriate information in the appropriate space. The Court finds he was capable of following the directions on the forms and there is no reason to conclude his ability to read and understand Administrative Directive 9.6 would be any different. Therefore, Mr. Perez has not exhausted his administrative remedies and the Court GRANTS summary judgment as to his Eighth Amendment deliberate indifference claims.

III.     Right to a Prison Job

Defendants do not move for summary judgment on Plaintiff's claim that he was denied a promised prison job because of his disability. The record indicates he exhausted his remedy for this claim. *See* [Dkt. 1-4 at 49]. The parties have stipulated that Defendant Lieutenant Pluszynski is the only Defendant who was personally involved in this claim. *See* [Dkt. 221-8 (Def. L. R. 56(a)(1) Stmt) ¶ 11; Dkt. 225 (Opp'n on Mot. Supp. Summ. J.) at 1]. Therefore, this claim will proceed against Defendant Pluszynski but summary judgment is granted as to all other Defendants.

Conclusion

For the foregoing reasons, the Court GRANTS summary judgment for the Eighth Amendment claims as to all Defendants. The Court DENIES summary judgment for the ADA claim for reasonable accommodations.

This case will proceed to trial for the ADA reasonable accommodations claim as to all Defendants with respect to Plaintiff's request for (1) access to a CCTV for in-cell and in-unit use; (2) personal word processor for in-cell use; (3) access to a computer, printer, and scanner equipped with zoom text and window eye programs for the blind; (4) the return of his magnifying glass and sight cane; (5) the replacement of his clip-on magnifier; (6) large print materials; (7) trained mobility guides; (8) access to a CCTV in program areas including the libraries; and (9) 20/20 pens, yellow highlighters, and free matter (envelopes) for the blind to accommodate his disability and for right to a prison job under the ADA as to Defendant Pluszynski. The parties' Joint Trial Memorandum is due on or before August 3, 2018 and jury selection will take place on August 28, 2018.

IT IS SO ORDERED
_____ /s/ _____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 26, 2018